SO ORDERED.

SIGNED this 29th day of October, 2018.



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| JOSEPH RAYMOND BOUCHER,<br>                Debtor. | Case No. 17-11708<br>Chapter 13 |
| IN RE: | |
| SWIFT FINANCIAL<br>CORPORATION | |
|                     Plaintiff, | Adv. No. 17-5155 |
| vs. | |
| JOSEPH RAYMOND BOUCHER<br>and STIX, INC. d/b/a STIX POOL<br>AND DARTS | |
|                     Defendants. | |

MEMORANDUM OPINION

1

Just dropping the word "fraud" into a default judgment doesn't make it non-dischargeable. Unsupported and unreasoned conclusory fraud findings receive no preclusive effect in bankruptcy court, especially when those findings were made without the debtor participating. Without some record showing that Joseph Boucher engaged in intentionally misleading speech or conduct that caused Swift Financial Corporation to extend him credit, Swift's summary judgment motion must be denied. Swift's request that its arbitration award be confirmed is also temporarily denied pending Swift's demonstrating that mine is the proper Court to do that.[1]

Facts

Joseph Boucher filed for chapter 13 bankruptcy relief on August 31, 2017. Swift commenced this adversary proceeding seeking to except Boucher's debt to it from discharge under § 523(a)(2)(A) and (B), and requesting that this Court confirm an arbitration award against Boucher. Swift moves for summary judgment, contending that the Court must give collateral estoppel effect to an uncontested arbitration award entered against Boucher.

Prior to filing, Boucher owned two Kansas corporations—JonRoco, Inc. and Stix Inc—both of which were voluntarily dissolved on January 5, 2017. JonRoco owned real estate properties on south Main Street and on south Meridian in Wichita. Boucher ran a pool hall called Stix, d/b/a Stix Pool and Darts, in the Meridian property for over ten years until it closed December 24, 2016.

---

[1] Swift Financial Corporation appears by its attorney Austin B. Hayden. Joseph Boucher appears by his attorney William H. Zimmerman, Jr.

**2**

In February 2016, JonRoco's lender Rose Hill Bank sued JonRoco, Boucher, and Boucher's ex-wife, Rochana, in state court to foreclose real estate mortgages in excess of $530,000 against the Main and Meridian properties. Boucher and Rochana were separated and in the midst of a divorce proceeding that began in 2015. Boucher was named in the foreclosure action as a guarantor of the JonRoco debt. Stix was not named a party. The Bank obtained personal service of process on Rochana as an individual and as a representative of JonRoco. It served Boucher by leaving the summons at his residence. Boucher disputes that he received the summons and claims he was unaware of the foreclosure action until November of 2016, after the Bank obtained judgment. Boucher's attorney did not enter his appearance in the foreclosure case until November 17, 2016.[2] Swift was unaware of the JonRoco foreclosure and contends it would not have entered into future receivables sales agreements with Stix/Boucher had it known.

In August and again in September of 2016, Stix/Boucher applied for and entered into two future receivables sales agreements with Swift Financial Corporation, a Delaware corporation.[3] Except for the amounts of each Agreement, the terms of the Agreements were virtually identical. In the August sale agreement, Swift purchased $63,950 of Stix's future receivables for $50,000.[4] In the September

---

[2] Doc. 55-1, p. 12.
[3] "Receivables" were defined under the sale agreements to include "all payment rights" resulting from customers' purchases of goods and services from Stix, and included cash, checks, money orders, electronic fund transfers, and credit and debit cards. Doc. 45-5, p. 3, §1(f).
[4] Doc. 45-5, pp. 1-13.

3

sale agreement, Swift purchased $19,653 of Stix's future receivables for $14,900.[5] The purchase price under these Agreements was transferred to Stix by separate wire transfers. Stix agreed to repay Swift by paying weekly a percentage of its receivables. To effectuate this, Stix maintained a remittance account and authorized Swift to withdraw the weekly amount via electronic fund transfers. Boucher personally guaranteed Stix's obligations under the Agreements. Swift's obligations under the Agreement became effective upon "complet[ing] its review of [Stix]" and paying the purchase price.[6]

Both Agreements contain representations and warranties by Boucher and Stix that Stix was financially solvent, all information provided to Swift accurately reflected Stix's and Boucher's financial condition and results of operations, and that the future receivables were not subject to any prior encumbrances, claims, charges, or liens.[7] Events of default under the Agreements include: (1) the failure to make the weekly remittance of the receivables (*i.e.* nonpayment); (2) the breach of any representation or covenant in the Agreement or the providing of any false or misleading information to Swift; and (3) *after* the date of the Agreement, becoming subject to any material judgment.[8] The Agreements contained no representations about pending lawsuits at the time of their execution.

The Agreements also contained an arbitration clause providing for any claim between Swift and Stix/Boucher to be submitted to binding arbitration administered

---

[5] Doc. 45-6, pp. 1-13.
[6] Doc. 45-5, p. 2, ¶ C.
[7] Doc. 45-5, pp. 6-7, § 9.
[8] Doc. 45-5, pp. 5-6, § 7. Emphasis added.

4

by the American Arbitration Association (AAA).[9] After Stix/Boucher defaulted on the weekly remittances, Swift demanded arbitration in February of 2017.[10] That demand is not part of the summary judgment record, but is referenced in AAA's February 27, 2017 notice to Boucher which describes Swift's claim and states that Boucher's answer is due March 10, 2017.[11] Boucher received the notice but did not answer nor participate in the arbitration. After Boucher failed to respond, the arbitrator held a telephonic hearing on June 12, 2017 in which Swift's counsel presented unspecified evidence regarding its claim,[12] and the arbitrator issued his Award on July 11, 2017 in favor of Swift in the amount of $70,047.22, together with the AAA's administrative fees and the arbitrator's fee.[13] The Award recites that the arbitrator heard Swift's "proofs and allegations" at the telephonic hearing and found that—

> Stix is liable for breach of the Contracts, and that Joseph Boucher is liable as a guarantor and for fraud in obtaining the Contracts by failing to disclose a pending foreclosure action on the Stix place of business . . . .[14]

Swift omitted whatever evidence it relied on to prove this "fraud" to the arbitrator

---

[9] Doc. 45-5, pp. 10-11, § 24. A "claim" included contractual claims and claims for fraud. § 24(b).
[10] In addition to the monetary default, an event of default would have occurred when the Rose Hill Bank obtained judgment against Boucher in November of 2016.
[11] Doc. 45-9, p. 4. It is disingenuous to not include the arbitration demand in the summary judgment record. The demand would set forth each of the claims or issues that Swift submitted to arbitration.
[12] The arbitration was conducted under the Commercial Arbitration Rules. Rule 31 provides that where a party fails to appear the arbitration may proceed with the arbitrator requiring the appearing party [Swift] "to submit such evidence as the arbitrator may require for the making of an award." *See* Doc. 45-11, p. 22.
[13] Doc. 45-7.
[14] *Id.*

5

from the summary judgment record. Nor did it provide a transcript of the telephonic hearing. In discovery in this case, Boucher denied knowing about the JonRoco foreclosure when he signed the Agreements. This creates a material issue of fact.[15] Boucher also contends that there is no evidence that he deliberately, with the intent to deceive or defraud Swift or that he concealed or failed to disclose the foreclosure. He also notes (and I agree) that fraudulent intent is rarely shown on summary judgment.

Analysis

The question of dischargeability of a debt is a federal question governed by the Bankruptcy Code and the bankruptcy court has exclusive jurisdiction to determine dischargeability of all claims relating to fraud.[16] So even if another tribunal finds fraud by a debtor, the bankruptcy court must apply the § 523 standards to decide the issue of dischargeability. State law fraud can differ from nondischargeable fraud under § 523(a)(2).[17]

Here, Swift asks this Court to declare Boucher's debt under the Award nondischargeable under 11 U.S.C. § 523(a)(2)(A) as having been incurred by fraud. It says the Court must give collateral estoppel effect to the arbitrator's finding of "fraud" in the Award based upon Boucher's failing to disclose the pending JonRoco foreclosure action when he entered into the Agreements. But it's not that simple.

---

[15] Doc. 45-3, Request for Admission No. 9; Doc. 45-8, Interrogatory No. 8.
[16] *Grogan v. Garner,* 498 U.S. 279, 284 (1991) (citing *Brown v. Felsen,* 442 U.S. 127, 129-130 (1979)); *In re Curtis,* 40 B.R. 795, 803 (Bankr. D. Utah 1984).
[17] *Curtis,* 40 B.R. at 803-04.

**6**

The use of collateral estoppel in the bankruptcy context of determining the nondischargeability of a debt has prompted much discussion in the courts. In *Grogan v. Garner*, the United States Supreme Court generally recognized that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."[18] Courts first look to determine whether the federal rule of issue preclusion or the state's law of collateral estoppel applies.[19] The federal rule requires that the issues sought to be precluded must have been "actually litigated" in the prior proceeding.[20] Thus, under the federal rule, a judgment entered in the prior proceeding by confession, consent, or default isn't entitled to collateral estoppel effect because none of the issues were actually litigated.[21]

Some states' collateral estoppel principles give preclusive effect to a state court default judgment because the state law requires only that the parties had an "opportunity to litigate," even if the issues were not actually litigated. Doing that would prevent a bankruptcy court from retrying those issues.[22] Here, Swift proceeds in a federal court, seeking relief under two federal statutes, the Bankruptcy Code and the Federal Arbitration Act. In *Brown v. Felsen*, the Supreme Court held that

---

[18] *Grogan v. Garner,* 498 U.S. 279, 284 n. 11 (1991) (determining the appropriate standard of proof in determining nondischargeability under § 523(a)(2)).
[19] *See In re Wald,* 208 B.R. 516, 520-26 (Bankr. N.D. Ala. 1997) (discussing the general federal rule (followed by a majority of courts) and state law collateral estoppel rules and application to state court default judgments).
[20] *See Arizona v. California*, 530 U.S. 392, 414 (2000) (issue preclusion applies only "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment," quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27, at 250 (1982)).
[21] *Arizona v. California,* 530 U.S. at 414;
[22] *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373 (1985).

7

bankruptcy courts should apply federal law to determine whether to grant collateral estoppel effect to a state court default judgment.[23] That direction requires me to apply the same rule here.

Other collateral estoppel questions are pertinent to the Award in this case. Can an arbitration award be given collateral estoppel effect? The Tenth Circuit has given collateral estoppel effect to a confirmed arbitration award, at least where "the arbitration was akin to a full-blown trial."[24] Can an unconfirmed, but final, arbitration award be given collateral estoppel effect? Though there is no clear Tenth Circuit authority on this issue, there is ample authority from other circuits that an unconfirmed, final arbitration award may be given preclusive effect.[25]

This Award is akin to a default judgment. The federal rule of issue preclusion requires the issue of fraud to have been "actually litigated." Under the federal rule, a judgment by default is not accorded collateral estoppel effect.[26] Boucher did not file an answer to Swift's demand for arbitration; the Commercial Arbitration Rules

---

[23] *See Brown v. Felsen,* 442 U.S. 127 (1979); *Wald,* 208 B.R. 516, 520 (concluding that Supreme Court decision *Brown v. Felsen* requires bankruptcy courts to apply federal law to determine the collateral estoppel effect of a state court default judgment). *See also* Doc. 45-5, § 24(c), (d); 9 U.S.C. § 1 et seq.; *Lewis v. Circuit City Stores, Inc.,* 500 F.3d 1140, 1152 (10th Cir. 2007) (where Federal Arbitration Act applies to arbitration agreement, it preempts any conflicting state law).

[24] *See B-S Steel of Kansas, Inc. v. Texas Industries, Inc.,* 439 F.3d 653, 662-66 (10th Cir. 2006) (agreeing with and quoting the district court decision, 327 F. Supp. 2d 1252, 1258 (D. Kan. 2004)); *Coffey v. Dean Witter Reynolds Inc.,* 961 F.2d 922, 925-28 (10th Cir. 1992);

[25] *See e.g., Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 267-68 (2nd Cir. 1997); *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1169 (8th Cir. 1989); *Manganella v. Evanston Ins. Co.,* 700 F.3d 585, 591 (1st Cir. 2012).

[26] *See* RESTATEMENT (SECOND) OF JUDGMENTS § 27, cmt. e (1982) (issues not "actually litigated" include issues determined by default, consent, or confession; the general rule in § 27 doesn't apply when the issue has not been contested in the prior action).

8

provide that Boucher was therefore deemed to have denied Swift's claim, so the arbitration went forward.[27] He did not participate in the preliminary hearing held by the arbitrator.[28] Nothing in this record suggests that Boucher participated in any "discovery" or exchanged documents or information with Swift during the arbitration. Swift argues that the Award cannot be a "default judgment" because the Commercial Arbitration Rules do not permit an arbitrator to make an award solely upon a party's default or absence, but require the party present at the hearing to submit evidence "as the arbitrator may require for the making of an award."[29] Swift says that happened at the telephonic hearing held June 12, 2017, but who knows? Swift didn't describe what it presented or supply a transcript for the summary judgment record. Boucher did not appear or participate in that hearing. Swift's unopposed presentation of its evidence (if that happened) doesn't transform the proceedings without Boucher into "actual litigation." Under the federal issue preclusion rule, the Award is not entitled to collateral estoppel effect.

In *Brown v. Felsen,* the Supreme Court addressed the bankruptcy court's role in considering dischargeability of a debtor's debt based upon a prior state court judgment.[30] In that case, the parties stipulated to a consent judgment in favor of Brown and against Felsen, without articulating the theory of Felsen's liability. When Felsen filed bankruptcy, Brown sought a determination that the debt was not

---

[27] Doc. 45-11, Rule 5(a), p. 12.
[28] Doc. 45-11, Rule 21, p. 19.
[29] Doc. 45-11, Rule 31 at p. 22. Rule 32(a) required Swift to present evidence to support its claim.
[30] 442 U.S. 127 (1979).

**9**

dischargeable because it was incurred by debtor's fraud and malicious conversion. Felsen contended that Brown was barred from relitigating the nature of his debt to Brown under the doctrine of *res judicata*. The Supreme Court rejected that contention and held that the bankruptcy court was not limited to a review of the judgment and record in the prior state-court proceeding in determining the dischargeability of the debt. The bankruptcy court could consider evidence extrinsic to the judgment as well as the state court record in the prior proceeding to determine whether the debt was dischargeable.

*Brown* concerned *res judicata*. The Supreme Court distinguished that doctrine from collateral estoppel, leaving open the possibility that collateral estoppel might preclude relitigation of issues in dischargeability proceedings:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. [citations omitted]. If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court. Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral estoppel effect to a prior state judgment.[31]

---

[31] *Id.* at 139, n. 10. *See In re Franklin,* 615 F.2d 909, 911 (10th Cir. 1980) (bankruptcy court not limited to state court record in making dischargeability determination).
Section 17 of the Bankruptcy Act of 1898 is the precursor to 11 U.S.C. § 523(a)(2).

**10**

Finally, even though *Brown* was decided under the Bankruptcy Act, it remains good law today.

Even if the Award merited collateral estoppel effect, determining whether the debt it represents should be discharged is governed by § 523(a)(2) standards and this Court has discretion to apply issue preclusion.[32] To prevail on a **§ 523(a)(2)(A)** actual fraud claim, the creditor must prove by a preponderance of the evidence that debtor made a false representation with the intent to deceive the creditor, that the creditor justifiably relied on the representation, and that debtor's misrepresentation caused the creditor's loss.[33] In *Fowler Bros. v. Young*, the Tenth Circuit recognized that a failure to disclose may constitute a false representation and satisfy the first element of a § 523(a)(2)(A) claim *in circumstances where there is a duty to disclose.*[34] The Award's bare fraud finding was based on debtor's failure to disclose the foreclosure lawsuit. The arbitrator did not find that Boucher had a duty to disclose the pending foreclosure action. Nor is the source of that duty clear.[35] If Boucher did not have a duty to disclose, Swift must establish that debtor made a false representation. Again,

---

[32] *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331 (1979) (Trial courts have broad discretion to determine whether the use of offensive collateral estoppel should be applied.); *Arapahoe County Pub. Airport Auth. V. FAA,* 242 F.3d 1213, 1220 (10th Cir. 2001) (even where elements of collateral estoppel are present, it is within court's discretion whether to apply the doctrine). *See also Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1361 (11th Cir. 1985) (federal courts should be hesitant to preclude the litigation of a federal claim based on the collateral estoppel effects of a prior arbitration award, focusing on the federal interest in insuring a federal court determination of the federal claim).

[33] *Id.* at 1373

[34] *Id.* at 1374-75.

[35] *See Myklatun v. Flotek Industries, Inc.,* 734 F. 3d 1230, 1234 (10th Cir. 2013) (A duty to disclose may arise from a fiduciary or agency relationship between the parties). An arms-length commercial sale transaction between a buyer and seller creates no fiduciary or agency relationship.

**11**

the arbitrator made no finding that Boucher falsely represented there were no lawsuits pending against him. The Agreements, fully integrated contracts, lack affirmative representations by Boucher that he was not the subject of any pending lawsuit or litigation when they were executed.[36] Nor is a separate guaranty agreement part of the record here.[37] Maybe Boucher made that representation in the application process, but the record lacks any evidence that the application was submitted to the arbitrator. Nor was it submitted to the Court. In sum, there is nothing in the record other than the Agreements themselves and the Award.

Not only is the "false representation" element missing, so is any proof of Boucher's intent to deceive Swift. The Award made no findings on this or any other element of § 523(a)(2)(A). The cupboard is also bare of any record shedding light on whether Boucher's nondisclosure was intentional or inadvertent. No transcript or record of the telephonic hearing before the arbitrator has been submitted by Swift to demonstrate the "proof" it submitted in the arbitration. The Commercial Arbitration Rules do not require the arbitrator to make detailed findings of fact and conclusions of law. Rule 46(b) addresses the Form of Award and provides:

> The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.[38]

---

[36] *See* Doc. 45-5, §§ 9, 25.
[37] The Court observes that the Agreements defined "you" or "your" as used in certain sections, including the representations and warranties section (§ 9), to apply to both Stix (the Business) and each guarantor individually. *See* Doc. 45-5, § 5(b). This presumably dispensed with the need for a separate written guaranty agreement with Boucher.
[38] Doc. 45-11, p. 27, Rule 46.

**12**

Swift could have asked the arbitrator to address each element of the fraud it alleged and to make findings based upon the evidence it presented to support those allegations. It didn't, leaving this Court with only the arbitrator's bald fraud conclusion based on Boucher's alleged failure to disclose the JonRoco foreclosure suit. Such a bare record cannot be accorded collateral estoppel effect.[39] Summary judgment on Swift's § 523(a)(2)(A) claim is denied.

Swift's argument that the collateral estoppel effect of the Award prevents litigation of its § 523(a)(2)(B) fraudulent financial statement claim against Boucher also fails at this point. A claim under § 523(a)(2)(B) requires proof that Boucher made a written statement respecting his financial condition, the written statement was false, Swift reasonably relied upon the written statement, and Boucher made the written statement with the intent to deceive.[40]

The Award doesn't mention that Boucher made a false written statement regarding his financial condition and Swift hasn't supplied one. That is far short of establishing a § 523(a)(2)(B) claim. The Award is not entitled to collateral estoppel effect with respect to the § 523(a)(2)(B) claim for

---

[39] *Cf. Jones v. Gilbride (In re Gilbride),* 32 B.R. 75, 76 (Bankr. S.D. Fla. 1983) (final judgment that recited only legal conclusions was insufficient for application of collateral estoppel) and *State Bank of Springhill v. Davis (In re Davis),* 18 B.R. 301, (Bankr. D. Kan. 1982) (granting plaintiffs' motion for summary judgment and applying collateral estoppel to dischargeability complaint where state court actually and necessarily litigated issues of how fraud occurred and made detailed findings of fact and conclusions of law satisfying all the elements for nondischargeability).

[40] *See Lamar, Archer & Cofrin, LLP v. Appling,* __ U.S. __, 138 S. Ct. 1752, 1761, 201 L. Ed. 2d 102 (June 4, 2018) (statement is respecting a debtor's financial condition if the statement has a direct relation to or impact on the debtor's overall financial status and can be a statement about a single asset).

all the same reasons articulated above. Stix's or Boucher's breach of the Agreements does not prove that Boucher presented a false written statement about his financial condition to obtain the money Swift advanced under those Agreements. Summary judgment on the § 523(a)(2)(B) claim must also be denied.

Finally, Boucher filed bankruptcy before Swift petitioned a court to confirm the Award. Swift did not request stay relief to obtain confirmation of the Award in another forum, but it has included that request for relief in its adversary complaint. Parties to an arbitration under the Commercial Arbitration Rules are deemed to have consented to a court's entry of judgment on the Award.[41] Boucher opposes Swift's request to confirm the Award on summary judgment because it was entered by default.[42] Swift asserts that any court, including the bankruptcy court, may confirm an arbitration Award under the Federal Arbitration Act. The provision cited by Swift, however, states that if the arbitration agreement does not specify the court to enter judgment on the award, then the application is to be made to "the United States court in and for the district within which such award was made."[43] The Court questions whether it is the proper court to confirm the Award as the arbitration provision in the parties' Agreements provides that an arbitration hearing is to be held in Delaware. No in-person hearing was held; it was

---

[41] Rule 52(c), Doc. 45-11, p. 29.
[42] Doc. 55 at p. 6. In his answer to the complaint, Boucher only denied the Award's binding effect on the Court. *See* Doc. 28, ¶ 9.
[43] *See* Doc. 45 at p. 3, citing 9 U.S.C. § 9.

**14**

conducted via teleconference. The arbitrator appears to reside in Pennsylvania, based on his curriculum vitae, and presumably would have made the Award in that "district." The Court will defer ruling on Swift's request to confirm the Award to the trial and hear that issue along with the nondischargeability claims. In any event, the confirmation of the Award, will not change this Court's determination regarding its collateral estoppel effect on Swift's § 523(a)(2)(A) and (B) claims remaining for trial.

Conclusion

Summary judgment is DENIED. This matter is presently scheduled for trial on the November 13-14, 2018 stack docket. The Court will convene a brief telephonic status conference with counsel on **October 31, 2018 at 1:30 p.m.** Counsel are directed to contact clerk staff to obtain the call-in information.

# # #